On behalf of the appellant, cross-appellate, Mr. Donald Craven, on behalf of the appellate cross-appellant, Ms. Nancy Littleton. Thank you. Mr. Craven. Thank you. May it please the court, counsel. There are two issues presented in this appeal. I'm the appellant on one and the cross-appellate on one. And likewise, with leave of court, I'd like to address both issues, followed by counsel for the school district discussing both of those issues. And on rebuttal, we'll stick to what we're supposed to be rebuttal. The first issue is the denial of the petition for attorney's fees in this case. There were substantial changes to the Freedom of Information Act of 2010 that were intended to promote compliance, increase compliance by public bodies under the Freedom of Information Act. Those changes were intended to change the tone and change the culture of public bodies in response to the Freedom of Information Act in Illinois. Speaker Madigan, when he took to the floor of the House to speak to the attorney's fees issue, referenced that the purpose of the change in the 2010 statute was to make attorney's fees mandatory to those who obtain public records they seek. The purpose of the attorney's fees provision was to provide an incentive to a requester to pursue the claim for public records and, conversely, provide an incentive to the public body to quickly turn over those records if no exemption likely applied. The ruling in this case that the release of the records after litigation was filed cuts against that purpose and that presumption in two ways. From the requester's perspective. You failed to mention one other salient fact, and that was the trial court never entered an order granting you the relief. This was done voluntarily by the school district, or at least it was done on its own volition prior to the entry of any order or judgment from the trial court. It was done after we filed the litigation, but before they either had to file an answer, which would subject them to Rule 137, or before the court entered an order. Wouldn't your interpretation require us to ignore the other change that was made from substantially prevails to prevails? By definition, prevail means that you must prevail on your litigation. In other words, the court must award you relief otherwise you haven't prevailed. I'm sorry. I didn't mean to step on your line. As Italiani court found. A plaintiff, a requester prevails in a FOIA case. If and when that requester obtains the records that they asked for. We prevailed in this case. We obtained every record in this case, one record that we asked for. The purpose of the changes in 2010 was to promote early release. The purpose of and defining prevail, taking away substantially prevail, and defining prevail as obtaining the records that you want. Well, if that's what the definition of prevail is, what's the definition of substantially prevail? That you only get one of ten documents voluntarily or on their own volition, and then the other nine have to be granted by court? I mean, if we accept your definition of what prevail means, what is the lesser definition of substantially prevail? The federal cases that deal with, and Illinois cases that deal with, mostly federal cases, that deal with requests for multiple records. And then the court enters into a balancing test. Did you substantially prevail? You got seven out of ten. You got eight out of ten. You got two out of ten. You got one out of ten. There are cases in which fees have been denied when you ask for a stack and you only get a sheet of paper. What was the purpose in eliminating the word substantial and then providing that the party that prevails shall pay attorney fees? Well, clearly, the purpose of removing the word substantially isn't really discussed in the legislative record. But clearly, Speaker Madigan is very clear that if you prevail, if a party obtains the records that they ask for, they should get their attorney's fees paid. Justice McClaren's question, though, that he asked, if your litigation is over 1,000 documents and you get 499 as a result of a court order, would you say you've prevailed there? Yes. What if you get one document? There is case law to the proposition that that's not prevailing. That's federal? Yes. But to require a court order in order to obtain an award of attorney's fees cuts against the very legislative purpose that is clearly part of the 2010 amendments. If I'm a FOIA requester and I go see a lawyer and I say I want to file suit, am I going to get my fees paid? The obvious legislative intent was that, yes, if you prevail, if you get the record that you seek, you should get your attorney's fees paid. You shall get your attorney's fees paid. With this ruling, I can't answer that question. Yes, you're going to get your attorney's fees paid unless you incur all these fees. And then during the course of that litigation, up until the very day that the court rules that the records have to be turned over, if they do it then, regardless of their conduct during the course of that litigation and regardless of the baseless exemptions that are claimed, you've got to eat the fees. You're not going to get your attorney's fees paid. You're sitting out the fact that there's a civil penalty that's available and it wasn't posed in this case. So there are ramifications for someone who plays games and doesn't turn over documents. So the spirit of the law is to make sure that the documents, eventually, if they're not protected, if they're not exempt, that they are going to be disclosed. Correct? Correct. But the limit on that civil penalty is $5,000. So if a public body really doesn't want to turn loose of the record, they can stall. They can delay. They can provide whatever exemptions they want. And they know that they're dealing with a $5,000 cap. They can run up attorney's fees to any extent that they're willing to bear. And they know that they're looking at a $5,000 cap on civil penalties. That wasn't the intention of the legislature, obviously, according to Speaker Madigan's floor speech. And in this case. When do we look to Speaker Madigan's floor speech? We don't look to that unless there's some ambiguity in the plain and ordinary understanding of the language of the statute. Correct? That's correct. Is there an ambiguity there? Well, I think the difficulty that the trial court was having, parsing the difference between substantially prevail and prevail, lends credibility to the conclusion that, yes, there's ambiguity. It's not clear from the face of the change in the statute what the deletion of that word meant. It's not clear from the legislative debate. It's still not clear. You pointed out that there's another sanction as well. Did you not? Yes. Remember what you said. Rule 137. Yeah. But that requires the filing and signing of the plea. In this case, the documents. If they don't do that, don't you think you probably could get a default judgment? But in this case, this document was turned over before anybody had to file an answer. Right. So if they didn't file an answer, it would be a default judgment. You would get a judgment. Then you would get attorney's fees under those circumstances, would you not? Unless the document is turned over before the default judgment is entered. We have a hearing. I file a motion for a default judgment. We have a hearing. The court takes it under advisement. The next day, the document's turned over. Before an order. The alleged document is turned over. You could have a hearing to determine whether or not what they turned over was, in fact, what you were seeking. Right. But so long as the requested document is turned over before an order is entered, compelling production. As long as they're delinquent in filing their answer, it would seem to me you'd be entitled to a default. Whether or not you'd be entitled to a default judgment upon prove-up or whatever is another matter. Right. But it's clearly not the purpose of the changes in 2010 to put a FOIA requester through those expenses in order to obtain a public document. In order to obtain a record which the school district now concedes had no exemptions applicable to it. The purpose of the changes in 2010 was to convert those costs to the public body and assign those costs to the public body. Not to make a FOIA requester jump through those hoops in order to obtain a public record. This was designed to make it easier, not harder, and not more expensive. Before my time runs, I want to turn briefly to the issue of civil penalties. But before I do that, I do want to note the language in the trial court's opinion on civil penalties as it applies to the attorney's fees question. Because the trial judge found when he was awarding civil penalties, he did say, he did use the language, that only when the lawsuit was filed, only when litigation was commenced, did the school district concede that its position was indefensible, that the exemptions didn't apply, and then they turned over the document. Litigation was absolutely necessary, even according to the trial judge in this case, in order to compel compliance. Just so I understand your argument, your argument is that if you file suit, then there is no advantage on the part of the school district except to mitigate their damages by doing what they did, which was to give you the documents. Because under your interpretation, they're going to pay attorney's fees no matter what. So the only way in which they would be affected is the sooner they give it to you, the less attorney's fees they'll pay. Unless they think that they have an exemption that truly applies, which they didn't in this case, and they turned over the document. If they want to litigate whether an exemption applies, yes, they run the risk of paying the attorney's fees if I prevail. They were essentially saying what happens at school stays at school until you've brought the litigation. And then you're saying the catalyst theory should apply. Yes. And in this case, turning to the question of civil penalties, the trial judge found that this game was going to continue until we filed this lawsuit and the civil penalty and those provisions kicked in before we got to filing an answer. Is this a nature of a penalty, the assessment of attorney's fees? No. I mean, well, if I'm the school district, right? Well, what I'm getting at is should this be narrowly construed or broadly construed? Fee-shifting statutes are narrowly construed. Thank you for your candor. I try. Yes. And as long as we're being candid, look at the language on the issue of civil penalties. Look at the language that this trial court used to describe the conduct of this school district. It is beyond candid, facially untenable, resoundingly unconvincing, strongly suggests that the district first decided it would not release a document which it did not want to release, and only then did it begin to look to support a decision that had already been made. The district's intransigence. Only when the requesting party filed suit did the district was finally compelled to concede that its position was indefensible. Indefensible, resoundingly unconvincing, intransigent. Those are precisely the reasons that the General Assembly imposed the civil penalty provision in the 2010 amendments. You just answered the question. That's why they imposed the civil penalty provision. It's not the attorney's fees provision. No, the civil penalties provision. The attorney's fees provision was to encourage people to bring something, encourage people to know that if so long as you are pursuing public records and if you prevail, you're going to get your attorney's fees paid. This is the civil penalty provision is to hopefully deter school districts or other public bodies from doing what the school district did, according to the trial judge, in this case. The record in this case demonstrates precisely what this court found. That this was a game from day one. The first request for this record to the school district, Mr. McGahee, for some reason, included the language, I want this letter, and he described the letter. And he said it was emailed to the district. And the response was not you can't have the letter, not it's exempt from disclosure. The response was no such record exists because it wasn't emailed to the district. And from there we started the dance. And we go from one exemption one to exemption two to exemption three. The trial court's finding that penalties should apply under the statutory standards is well founded and should be affirmed. You'll have an opportunity to make the vote. Thank you. Good morning, Your Honors. Good morning. Counsel. My name is Nancy Bush and I represent the defendant. The first issue is whether the 2010 amendments was intended to change the law. Whereas this grows pointed out. I think it's probably obvious that it was intended to do something. The question is to what extent? Well, there are two changes, as the court has pointed out. One is substantially prevails. And substantially, the plain and ordinary meaning is in part. So when you substantially prevail, you only prevail in part. When you eliminate the substantially, the advert, I believe, then you've got you must prevail in whole. So as the trial court correctly noted, this change means you have to have something more. It's no longer substantially or a partial prevailing. Under the 2010 amendments, we now have you must prevail in total. And once it raised that bar to must prevail in whole, then it said then you shall award fees. It is under this context that the catalyst theory then is considered. But the rules of statutory construction really govern this case because the statute is unambiguous. But there are certain presumptions that courts routinely apply. For example, the legislature is presumed to amend the law and change it when they enact an amendment. The second one is that the legislature is presumed to know the judicial decisions on statutory language. Here, there's really two aspects of that rule. The first is when the rule or when the amendment said substantially prevails, there were two cases that said a voluntary action of the defendant suffices for substantially prevails and fees may be awarded. Those are the cases which predate the 2010 amendment and the cases that predate the Supreme Court in Buckhannon that the plaintiff relies on. And these two cases, Duncan and Ulrich, they rely on the federal cases that in 2001 the U.S. Supreme Court then reverses. The second aspect of this rule that the legislature is presumed to know of the court's construction is what happens post-Buckhannon. There are two Illinois cases that construe prevailing party. And those cases post-Buckhannon say, well, you have to, that if the action is voluntary, this is not a prevailing party. These two cases are, of course, all states and Brummer. In all nations, not all states, all nations, the issue was what type of relief a party must receive in order to be deemed a prevailing party. And the answer was, well, it's not voluntary action. And that's a decision by this court. You know, the legislature knows that substantially prevailing permits fees under Duncan. And it amended to comply with the holdings that a prevailing party is not voluntary action. So it clearly rejected the argument that the plaintiffs are making. I think there's another fact that this court should consider and that the 2010 amendment must be considered, which is the federal government in 07 had amended the federal statute specifically to adopt the catalyst theory. It defines substantially prevailing as voluntary action. Illinois could have three years later, but chose not to adopt that kind of language. And although Illinois' FOIA statute was originally modeled on the federal statute, the Illinois legislature made the decision not to take that and to raise a higher standard. The plaintiff argues, well, it's just not fair. It's an injustice. We were forced to hire attorneys and expend fees. But it's not unfair. In the United States, we have the American rule, which is that litigants must bear their own fees. And as Buckhannon has noted, when it rejected the catalyst theory, well, if you're going to try to have a foundation for departing from the American rule, you must have a judicial decision, which is what is prevailing. It's really no more unfair to have FOIA plaintiffs bear their own fees than a personal injury plaintiff, who must pay one-third contingency fee, typically, to their attorney. It's what the American rule always is. The plaintiff has also argued that it's an injustice because the public body somehow conceded its indefensible position by releasing the record before the court could act. I'd like to remind the court that the merits of these exemptions was never adjudicated. The district became aware that this letter, I mean, they were litigating over a letter that was already public. They were disputing these issues, and when it realized that the letter was in public circulation, the author had authenticated it, the district made the decision not to continue to litigate. The plaintiff points to the phrase incentive structure when it comes to fees, and I think that's interesting, and he's made the argument today that, well, this is what the 2010 amendment is really all about. But what they're really arguing is public policy. They think fees should basically be automatically awarded if you prevail in any part of it, but that's not what the Illinois legislature has said. And it's not really unfair because, as Your Honor has pointed out, you don't need to adopt the catalyst theory. This honor has pointed out, well, you've got civil penalties, so you don't really need the fees because there is a civil penalty, and you don't, let me back up. I'm sorry, let me strike that. But Hannon said the catalyst theory is not necessary to prevent the defendants from moving an action because there is the threat of fees and, of course, there is the threat of a civil action. Civil action or civil penalty? I'm sorry? You said a civil action. Oh, I meant civil penalty, yes. That's what I asked you. I said civil penalty. Yeah, sorry. In any event, the Illinois legislature decided Illinois policy on the fees issue. It chose not to adopt the federal lesser standard, which would have permitted fees with voluntary changes. I would ask this court to affirm on this issue. If there are no questions on this, I'd like to move on to the civil penalty. What's the standard of review regarding the civil penalty? I think this is interesting, and I was a little surprised as an appellate practitioner, but the law shows, and this court's precedent is, if the documentary evidence is the basis of the decision, there's no hearing, there's no witness credibility to decide, the trial judge is in no better position than this court to review the evidence and draw conclusions. Now, the parties don't agree on the conclusions that can be drawn from those facts, but the facts themselves are established and primarily established by contemporaneous documents. We submitted a couple of affidavits, but primarily it's these documents. So the standard of review, Your Honor, is de novo, and that's why we submit that the plaintiff's reliance on the language, the harsh language of the trial court, it's just not binding on this court. His conclusions are not binding. I think it's important to note first that the trial court found – Could I interrupt and ask you, if it's de novo review, it's de novo review based upon what factual scenario? In other words, normally the original concept of de novo review was based upon the fact that there were no facts in contention. The facts were uncontroverted. And therefore, we as a reviewing tribunal could accept those facts and apply the law as we saw it. If that's the concept behind de novo review, then tell us what the facts are that we're supposed to be reviewing to make an independent judgment as to whether or not this was correct or incorrect. All right. Well, first, we did not raise these exceptions in seriatim. There were unusual proceedings during this case. We initially raised the two exemptions, but because of this odd preapproval procedure that the PACT has, we got first a decision from the PACT. The district then wrote McGee and said, okay, we're still raising these two exemptions, but by the way, the PACT did consider one of them. Meanwhile, things go awry because Mr. McGee files a request for review. We don't know about it. And simultaneously, the representative asks us, will you consider your opinion? This is really nothing more than let's resolve the dispute. Can we resolve the dispute? And the attorney for the district said, okay, I'll reconsider. Let's look at it. That doesn't sound like what the trial court found, though, did it? You asked for the facts that explain. I thought it determined that as a matter of fact, your client had decided that it wasn't going to disclose and it was going to try and find a rational reason. And when the first two didn't pan out, they came up with the third. So I'm having a problem accepting your uncontroverted facts as the basis upon which we're supposed to make a new determination as to whether or not the penalty should have been applied and if so, what the amount should have been. I think what you're saying is he concluded that because we agreed to discuss with the district the relative positions, he concluded that that was intransigence. I think we agreed to discuss the merits of the two positions. Out of nowhere, the PACT issues a decision. We didn't know about it. We have no idea. But now we've already committed and said, yeah, we'll consider these positions. And we issued that letter on October 8th. That fact, that letter, and the fact of agreement is uncontroverted, your Honor. What is controverted, well, the trial court labeled it intransigence. I label that. We agreed to reconsider opinions and negotiate with an opponent, and we did that in fairness. So we are given the opportunity to determine whether or not it is or is not intransigence. Yes. Or recalcitrance. Right. Or obsequiousness. Well, specifically. Or ignorance. Did we willfully. Or stubbornness. Or any other adjective or adverb you want to come up with. Well, of course, the standard in FOIA is willfully and intentionally failing to comply with the act or acting in bad faith, and I submit we did not. You know, in that letter where we agreed to reconsider our positions with the plaintiff, in that letter we agreed to the merits of one of their decisions. How is that bad faith? We agreed. You're right. We're wrong on that one issue. There were very unusual proceedings in front of the PAC, and that's uncontroverted. She didn't give us notice. But then she said, oh, yeah, we will consider the third exemption you raised in your October 8th letter. Is it bad faith for us to wait for the PAC to issue a decision on the third exemption as she said she would? And it's not bad faith you're on. We didn't willfully violate this act. On October 4th when we received the opinion, shortly thereafter we contacted the PAC and said, well, what does this mean? Is this a binding decision? And then we issued that October 8th letter that the trial attorney was so critical of. We didn't violate the act. I mean, on November 2, we actually write the PAC saying, well, you agreed to consider this. We're waiting. Here's our position. So they actually complied with the act. Well, if you didn't violate the act, why did you voluntarily give the document out? Your Honor, at some point we realized that the letter was public and that Dr. Hardy has authenticated this letter. So what do we do? The personnel record exemption doesn't apply. And the PAC has indicated in a phone conversation she doesn't really find any merit in that third exemption. Is a violation of the act an element prohibitive or does it require a mens rea? I'm sorry, Your Honor. As a civil attorney, my mind just went blank. Well, an element prohibitive means that you could have, it's like a speeding violation. You can violate it whether you realize that the timing was speeding or not. Murder, on the other hand, requires some knowledge that what you're doing will cause grievous bodily harm and probability of death. So the point I'm getting to is you could have unknowingly violated the law, which is malum prohibitum, versus, as you've been saying, which would relate to mens rea, you or your client did not intentionally violate the law. So now we get to the nature and extent of the violation and we determine whether or not the legislature has come up with certain penalties or damages or offsets that are supposed to compensate petitioners who seek information which apparently they may be entitled to. So if we're talking about a malum prohibitum, we're talking about a violation that maybe doesn't require a full $5,000 assessment. Maybe it's $500, maybe it's $1,000. But if it was knowingly and intentionally done with malice aforethought, then maybe we're talking about full $5,000 and maybe we're talking about attorney's fees because if you had that, you probably would have filed an answer and fought this to the bitter end. I don't think there's been any violation of the act and nobody's identified it, Your Honor. First of all, we conferred with the pact as soon as we were aware about the proceedings. I think the trial court made specific findings with regard to the after added, I'll use that term, the after added exemption. Where in the act is that allowed for? Well. Where in the act does it say that you can raise an exemption, have those exemptions shot down, and then come back and rely on another exemption? I mean, didn't the trial court focus on that in its written findings? He focused on the November 8th letter, yeah, absolutely. He called that. Where in the act is there justification for that behavior by the school district? Okay. Well, you don't need to look at the act to have an attorney negotiating good faith with an opponent about a dispute. That's one. And the fact that we raised it as the third one, okay, the FOIA person didn't do it, but by then the proceedings before the pact were a little odd. She hadn't given notice. We didn't know about the request for review. We're negotiating in good faith. But at some point the pact says I'm going to consider it. Now, the pact has the ability to mediate disputes and consider the parties' positions. And when she said I'm going to consider the third exemption, how is that an intentional, willful violation of the act? I submit it is not. I would ask this court to reverse. You can't punish the district for agreeing to consider the position, reconsider its position of negotiating. You should not punish the district for waiting for the pact to take action on that third exemption. And you should not punish the district for disclosing an already public document. Thank you, Your Honors. You'll have an opportunity to make rebuttal on this particular issue. Thank you. Mr. Craven, are you ready? The school district defines, started with the definition of substantially prevailed and parsed the word substantially to be a limitation on prevailing on a quantitative basis. Did you prevail in part or did you prevail in full? Well, is quantitative objective or subjective? In this case, both, because we prevailed and got 100 percent of the records that we requested. So was the information quality? Was it worth all this? Having done FOIA cases for all these years, I've made the substantive judgment that it's not my choice. But, yes, it was an interesting letter to read. The district also categorizes their activity as voluntary, which is contrary to what the trial court found. The trial court found that there was nothing voluntary about this act and that they only did it when the litigation was filed and that they had to then file an answer. Let's start from square one, which is, what do you think the standard on review is? Do you think it's a no or against the manifest weight or an abuse of discretion? On the fee issue? No, on the penalty. On the penalty issue, I think it's an abuse of discretion. Okay, you heard Ms. Lesher say that it was de novo, did you not? Yes. And so you're disagreeing with that position? Yes. Could you explain why? Yes. I liken this finding, a finding required by this statute, to an indirect civil contempt proceeding, which is reviewed by this court as an abuse of discretion. Did party A willfully and intentionally violate a court order? Did the school district willfully and intentionally violate the terms of the Freedom of Information Act? It's an abuse of discretion standard, and I think that the findings of the trial court supported by the record. Well, then really it's a question of manifest weight as to whether or not there was a violation of an abuse of discretion as to the amount of the penalty that's to be viewed now. There's no dispute. The trial judge said $2,500 and no party except for don't make me pay anything at all. We have not raised the amount of the penalty on this appeal. There was a minimum penalty, was it not, by statute? Yes. And if I'm the trial judge, this is the first case of a civil penalty being asked for and applied in a FOIA case anywhere in the state. It's a new provision. This is obviously the first time this has come up, and certainly with the school district. We didn't raise the issue of the amount of the penalty in a cross appeal. But I do need to, because it was pointed out in a question from the court, there is nothing in the statute. I mean, the school district keeps saying, well, we agreed to reconsider our position. We agreed to reconsider our position. That was as to the application of the Personnel Record Review Act, and they did reconsider their position and determined that they were wrong. That doesn't give them the right to go back to the beginning and raise a new exemption, which is exactly what the trial court found to be prohibited and has no support in the statute. The statute says, five days, raise your exemptions, explain them, a detailed factual and legal basis, and it doesn't say six months, three months later, you get to raise new exemptions. Well, what if they, in two days, gave two reasons, and then on the fourth day gave a third, and on the fifth day gave a fourth? All within the five-day provision? Yes. I don't think anybody's going to find that that's a violation of the Act. Your argument is that they should not have relied upon the agreement by the PAC to consider the third exemption, that they were, at that point in time, they were cut off. Yes. They were cut off before. I think the PAC was wrong to consider it. I think they were cut off when their five days ran, and I think the trial court is exactly right when he says they kept looking for a reason not to let loose of this record, not let loose of this letter. Your argument is regardless of what the standard of review is, you should prevail on the civil penalty. On either standard of review, this record supports the imposition of the civil penalty. I do want to point out one last point, because it was raised two or three times, that this letter had somehow already been made public and had been authenticated by Mr. Hardy. That appears in this record in one place, and it was the, pardon my candidness, but it was the rather self-serving press release put together by the school district when they released this record on Thanksgiving Eve. And in that press release, there's no independent evidence of it in the record, but they say it's been public for months. Well, if it's been public for months, why do we wait until Thanksgiving Eve to release a record that was requested only three months ago? The games continued until the end. I would ask this court to reverse the determination on the issue of attorney's fees and affirm the determination of the trial court on civil penalties. Thank you. Thank you. Ms. Lisher? In fairness, I'm limited to the civil penalty unless this court obviously has questions. The standard of review governs the appellate world. It absolutely does. And I was here about a month ago arguing the same standard of review. Well, not the same standard, but arguing how important standard of review is. This court has held in Bilardo and Milledgeville that where there's no hearing and there's no credibility findings, that the standard of review is de novo. The facts are as they are set out. The conclusions are to be drawn by this court, de novo. The plaintiff has argued that, well, there's nothing in the statute permitting reconsideration of the position. You know, this is really unfair to the district because it didn't even know about the pending request for review when the plaintiff asked the district to reconsider. So we're being punished because we agreed to reconsider and negotiate effectively what was a settlement. And, again, it's that action that the trial court was so critical of. Well, relative to Justice Burkett's question, the follow-up might have been, what about the five-day limitation? Once the five days is up, isn't this now no longer open for alternative theories for the exemption? As Mr. Craven said, regardless of whether or not there's some negotiations on both sides, isn't the trial court supposed to follow the statute? Well, isn't the PAC supposed to do what she's supposed to do? How are we in bad faith when the PAC said, I'm considering the third exemption? Why are we in bad faith? Because we believed her and waited for that decision. The only reason she didn't issue a decision was because of what the plaintiffs did. It's not a question of waiting for the decision. It's maybe a question of whether or not the third issue or exemption should have been raised pursuant to statute. Was it brought up within five days of the commencement of the litigation? If it wasn't, then how does it – under what authority does five days turn into, you know, five weeks or whatever? Go ahead, Amanda. Well, Your Honor, there is a five-day limit. It's unusual procedural posturing of this case. The issue is whether we acted in bad faith or if we deliberately violated the statute. We were negotiating with the plaintiffs, raised the third exemption. The PAC said she'd consider it. She can mediate settlements with the parties. Did we comply with that five-day statute? No. Did we violate the statute in negotiating with our opponents and waiting for the PAC to issue the decision? Your Honor, you had a question? Did the trial judge make a credibility decision when it determined that from the start of the case that the school was playing games, most of the newspaper, and based its theory of playing games on the five-day limit for purposes of releasing the information, even though the statute doesn't clearly say that you can't do anything after the five days. And then he uses the third element to take the position that that further supported the judge's decision that that was an issue of credibility. And I think that the reason the judge awarded civil penalties was because he thought that the actions of the newspaper were essentially trying to cause problems and delay and just hold off as long as they could. But for purposes of release. And then when they found out the release, the document had been released, their pilot car just collapsed. Do you think credibility plays any role in? I do not. Because he draws these conclusions. In the judge's decision. If the trial judge makes these conclusions and writes a very inventive decision with these labels that are quite inflammatory, but if you look at what actually happened. For example, we're accused of raising exemptions in Seriato. Well, we raised two initially. The PAC rules on one. We agreed to negotiate positions because the plaintiffs asked us to do it. All of a sudden a decision comes out and we didn't even know she had a request for review. So at the point we're negotiating with the plaintiffs, we didn't know there was a request for review. Parties can always negotiate with their opponents. And the PAC has a lot of power here to negotiate and deal with the parties. Should we have raised that? Well, you know, there was a couple of errors by this FOIA non-attorney when she actually used the wrong number originally for the pre-approval exemption. So 7-1-N I think was part of the 2010. I have an uneducated FOIA officer sitting there, probably doesn't have the right statute as far as I can tell. Your position is that when you get down to the school of penalties, the decision is based solely on the documents, that the feelings of the judge with respect to the actions of the other party did not play a part in this ruling? Well, he looked at the same documents as this court will look at and he started using his inflammatory language and said we were playing games. But if you look at the totality of the facts, we're checking in with the PAC, trying to figure out what's going on. We are negotiating in good faith, not knowing that the PAC had a request for review. I want to take you back to the past responsibility. The Attorney General staff, they're trained to review the exemptions that are claimed, correct? And to determine whether or not the exemption applies when looking at the document. So the Attorney General's PAC is looking at what the school district presents and the exemptions that you present within that five-day window, correct? Yeah, I think that's how it works. Can't it be argued that based upon the documents, the failure to raise that third exemption was willful, and that the after-the-fact raising of that can be attributed to the school district and can't lay fault on the PAC officer, even though the PAC officer set out to consider the exemption? Well, I think you have to look at the chronology because... If we look at that chronology, de novo, which I'm looking at it, de novo, without the inflammatory language, you have five days to raise your exemptions. That's what the act was intended to have the Attorney General's staff, the PAC officer, look at. You fail to raise that exemption, you don't get a second shot. That's the way the statute is ordered, correct? You're forgetting the fact that we didn't know there was a request for review. So as far as we knew, McGee had agreed with us because we didn't know about the request for review. We didn't know what the PAC was doing. So thinking that that dispute was over and not knowing about the pending proceeding, we said voluntarily, yeah, we'll reconsider our decision. So I understand the five-day might be important, but the PAC didn't give us notice. We never had an opportunity to be heard. We thought the PAC proceedings were over when we agreed to reconsider, and that's the letter that the trial court was so critical of. If there are no further questions? I have none. Thank you. Thank you, Your Honors. Court's adjourned.